UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-23251-RAR

**CHALISSA OLIVERA TRUESDALE,**

    Plaintiff,

v.

**VENICE ARMS, INC.,**

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND AND GRANTING IN PART DEFENDANT'S MOTION TO STRIKE

**THIS CAUSE** is before the Court on Defendant Venice Arms, Inc.'s ("Venice Arms") Motion to Dismiss Plaintiff's Amended Complaint ("MTD"), [ECF No. 15], filed on December 20, 2023 and Defendant's Motion to Strike Amended Complaint ("MTS"), [ECF No. 16], filed on December 20, 2023 (collectively "Motions"). The Court has reviewed the Amended Complaint, [ECF No. 9]; Plaintiff's Responses in Opposition to the Motions, [ECF Nos. 17–18]; Defendant's Replies in Support of the Motions, [ECF No. 21–22]; and heard oral argument on the Motions on January 23, 2024 ("Hearing"), [ECF No. 24]. For the reasons stated on the record during the Hearing, and the Court being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, [ECF No. 15], is **GRANTED** and Defendant's Motion to Strike, [ECF No. 16], is **GRANTED IN PART AND DENIED IN PART** as follows.

### BACKGROUND

Before the Court is Plaintiff Chalissa Olivera Truesdale's three-count Amended Complaint for alleged discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–3619 ("FHA"). *See generally* Am. Comp. Plaintiff, a Hispanic woman, is an owner/member

of a 55-and-over Housing Cooperative managed and operated by Defendant, a Cooperative Association known as Venice Arms. Am. Compl. ¶¶ 6–11. Plaintiff owns a unit located at 1820 Venice Park Drive, Unit 205, 33181, in Miami, Florida ("Property"). Am Compl. ¶ 11. Plaintiff claims the Swedish-dominated Cooperative Association promotes racially discriminatory housing policies and "hate speech" in order to exclude non-Swedish owners and minorities from the Cooperative in violation of several provisions of the FHA. Am Compl. ¶¶ 1–24.

Plaintiff places special emphasis on the following alleged practices: (1) the Association's discriminatory enforcement of the Association's "No-Renter" rule, which she claims renders her unit valueless since she is not 55 and can neither live in it nor rent it, Am. Compl. ¶¶ 24, 33, 37; (2) the Association's collection of unauthorized fees, Am. Compl. ¶ 37; (3) the Association's discriminatory enforcement of the Association's guest policy, Am. Compl. ¶¶ 25, 29–32, 37; (4) the introduction of a unit owner's racist and homophobic motion to the Board, Am. Compl. ¶ 19; and (5) the Association's previous legal effort to block her inheritance of the unit in the Cooperative, a dispute in which Plaintiff ultimately prevailed. Am. Compl. ¶¶ 25, 37.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 556). "[T]he standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). "[W]hen plaintiffs 'have not nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed.'" *Id*. (quoting *Bell Atl. Corp.*, 550 U.S. at 570). Further, when evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). And the "court must limit its consideration to the pleadings and exhibits attached to the pleadings." *Gubanova v. Miami Beach Owner, LLC*, No. 12-22319, 2013 WL 6229142, at *1 (S.D. Fla. Dec. 2, 2013) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)).

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored and denied 'unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Bank of Am., N.A. v. GREC Homes IX, LLC*, No. 13-21718, 2014 WL 351962, at *4 (S.D. Fla. 2014) (quoting *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC,* No. 09–61490, 2010 WL 5393265, at *1 (S.D. Fla. Dec. 21, 2010)). "The purpose of a motion to strike is 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Hutchings v. Federal Ins. Co.,* No. 6:08-cv-305-Orl-19KRS, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). Such a motion should only be granted when it is required for the purposes of justice. *Badesch v. Aetna Health, Inc.,* No. 07–80991, 2008 WL 2856599, at *1 (S.D. Fla. July, 23 2008). Finally, courts possess the authority to strike a Plaintiff's request for unrecoverable damages at the motion-to-dismiss stage. *See Murphy v. Carnival Corp.,* 426 F. Supp. 3d 1288, 1290–91 (S.D. Fla. Nov. 8, 2019) (granting motion to strike plaintiff's request for damages for companionship and protection, mental pain and suffering, and punitive damages, finding such damages were not recoverable under Death on the High Seas Act).

## ANALYSIS

### I. Motion to Dismiss

#### A. *The Amended Complaint is a Shotgun Pleading*

The Eleventh Circuit has routinely condemned "shotgun pleadings" because they are a "waste [of] scarce judicial resources." *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). There are four types or categories of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The first type are pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Second are pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The third category encompasses pleadings that do "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. And fourth are pleadings that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Plaintiff's Amended Complaint is the third type of shotgun pleading. Specifically, it is unclear from the face of the Amended Complaint under which statutory provisions of the FHA each of its three counts intends to travel. For example, Count I is titled "Violation of Violation [sic] of the Fair Housing Act, 42 U.S.C. § 3601. Et Seq. On the Basis of Race." Am. Compl. at 7. In the numbered paragraphs within Count I however, Plaintiff references a series of statutes and regulations including, 42 U.S.C. § 3602, Am. Compl. ¶¶ 35–37; 42 U.S.C. § 3617, Am. Compl. ¶¶ 38–40; and 24 CFR § 100.70(a)–(d), Am. Compl. ¶¶ 41. At the Hearing, Plaintiff's counsel clarified that Count I intended to state a claim under 42 U.S.C. § 3617, but as he also conceded, this intention is genuinely unclear from the face of the Amended Complaint as currently pleaded.

The same is true with respect to Counts II and III. The Amended Complaint includes no statutory provision in the title of either Count. Count II is titled "Intentional Discriminatory Effect Under the Fair Housing Act." Am. Compl. at 11. Count III is titled "Discriminatory Effect Under the Fair Housing Act." Am. Compl. at 14. While these counts appear to be proceeding under disparate treatment and disparate impact theories of relief respectively, the Amended Complaint fails to tie either to any specific statutory provision of the FHA. Indeed, Counts II and III both cite to the same, single statutory provision—42 U.S.C. § 3602—which is the definitions section of the FHA and provides no cause of action *per se*. Am. Compl. ¶¶ 48–50, 65–67. No other statutory provision is mentioned in either Count. While Counts II and III do cite to an FHA implementing regulation, 24 CFR § 100.70(a)(b)(c) and (d)—a HUD regulation recently promulgated to reconfirm that both disparate treatment and disparate impact remain viable theories of relief under the FHA—each count cites the same exact regulation and subsections. Am. Compl. ¶¶ 62, 76. Accordingly, the Amended Complaint fails to draw any distinction between the two counts and identify the specific regulatory provisions applicable to each respective theory. *Compare* Am. Compl. ¶ 62 *with* ¶ 76.

Notwithstanding the Amended Complaint's failure to identify additional statutory provisions, Plaintiff's counsel nonetheless confirmed at the Hearing that Counts II and III intended to state claims for disparate treatment and disparate impact theories of relief, both of which are indeed viable theories of relief under 42 U.S.C § 3604(a)–(b). But this statute is listed nowhere in the allegations under either Count II or III. Accordingly, without more, the Court is unable to determine from the face of the Amended Complaint the specific statutory provisions Plaintiff intends to rely upon for relief in each of her three counts. Thus, all three counts must be **DISMISSED** *without prejudice and with leave to amend.*

### *B. The Amended Complaint Fails to State a Claim under the FHA*

Setting aside the shotgun pleading deficiency, which independently requires dismissal without prejudice, the Court proceeds with its analysis in accordance with Plaintiff's counsel's clarifications at the Hearing. As noted above, Plaintiff's counsel suggested that he intended Count I of the Amended Complaint to state a claim under 42 U.S.C. § 3617 and Counts II and III to state alternative disparate-treatment and disparate-impact theories of relief under 42 U.S.C. § 3604(a)–(b), respectively. As explained below, even if the Amended Complaint did not constitute the third type of shotgun pleading, the Court would still dismiss Counts I, II, and III for failing to state claims under 42 U.S.C. § 3617 and 42 U.S.C. § 3604. The Court begins with the flaws present in Counts II and III before then proceeding to Count I.

**1.   42 U.S.C. § 3604 (Counts II & III)**

Section 3604(a) states that it is unlawful:

> [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a).  Section 3604(b) states that is unlawful:

> [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).  Federal courts have consistently found "that section 3604 of the FHA applies only to claims relating to the buying or selling or leasing of housing." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1143 (S.D. Fla. 2004); *Gourlay v. Forest Lake Ests. Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1234 (M.D. Fla. 2003), *vacated by settlement*,[1] No. 8:02-CV-19-55T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003)

---

[1] The Court notes that after the *Gourlay* decision was published, it was withdrawn due to settlement. While this decision has no precedential value, Judge Huck found it squarely on point and determined the analysis

(finding sections 3604(a) and (b) are limited to conduct that directly impacts the accessibility to housing because of a protected classification, such as race); *see also Walton v. Claybridge Homeowners Ass'n, Inc.*, No. 1:03–CV–69–LJM–WTL, 2004 WL 192106, at *4 (S.D. Ind. Jan. 22, 2004) (section 3604 prohibits discrimination associated with the sale or rental of housing); *United States v. Weisz*, 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996) (conduct that interfered with neighbor's enjoyment of their dwelling because of their religion did not implicate section 3604); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 208 F. Supp. 2d 896, 900–02 (N.D. Ill. 2002), *rev'd in part on other grounds*, 388 F.3d 327 (7th Cir. 2004) (section 3604(b) claim dismissed in light of the allegation that plaintiffs owned their home before problems began).

Judge Huck's analysis in *Lawrence* is particularly persuasive on this point. 318 F. Supp. 2d at 1143 ("While this Court does not condone the comments and conduct of Novillo, the Defendants' failure to stop Novillo did not have any impact on the Lawrences' ability to purchase their home. Hence, the Defendants cannot be held liable under 42 U.S.C. § 3604."). Here, the Amended Complaint accuses Venice Arms—an Association per the terms of Fla. Stat. § 719.103(2)—of discriminatorily enforcing Association rules on the basis of race. *See, e.g.*, Am. Compl. ¶ 51. But because the Amended Complaint does not allege "conduct that directly impacts the accessibility to housing because of a protected classification, such as race," sections 3604(a) and (b) appear entirely inapplicable on these alleged facts. *Lawrence*, 318 F. Supp. 2d at 1143; *Gourlay*, 276 F. Supp. 2d at 1232, 1234.

Thus, as Plaintiff's counsel agreed at the Hearing, in order to survive dismissal a second time, Plaintiff shall identify persuasive or controlling authority indicating that a plaintiff can sustain an FHA claim under sections 3604(a) and/or (b) based upon allegations that an Association was discriminatorily enforcing Association or cooperative rules against a unit owner on the basis

---

was immensely persuasive in reaching his decision in *Lawrence*. This Court agrees and similarly relies upon the *Gourlay* analysis here.

of race—where the unit owner was not otherwise seeking to rent or purchase housing. Plaintiff must also sufficiently demonstrate that it was the Association itself, as the named Defendant, that was engaged in the alleged discriminatory conduct, rather than merely an individual owner or owners within the Cooperative. Accordingly, Counts II and III are ***dismissed without prejudice and with leave to amend.***

### 2. 42 U.S.C. § 3617 (Count I)

Section 3617 makes it unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected under this section.

42 U.S.C. § 3617. "The Eleventh Circuit, unlike most courts, has concluded that Section 3617 does not require proof of violation of Sections 3603–3606 in order to create liability." *Gourlay,* 276 F. Supp. 2d at 1235 (citing *Sofarelli v. Pinellas County,* 931 F.2d 718, 722 (11th Cir.1991)); *but see Frazier v. Rominger,* 27 F.3d 828, 834 (2d Cir. 1994) (holding that section 3617 is limited to violations of sections 3603–3606). "Under the Eleventh Circuit's interpretation, it appears that liability exists if a plaintiff can demonstrate that: (1) a defendant coerced, intimidated, threatened, or interfered; (2) with a; (a) plaintiff's exercise of a right under Sections 3603–3606; (b) plaintiff's enjoyment of a housing right after exercise of that right; or (c) plaintiff's aid or encouragement to a protected person to exercise or enjoy a housing right; (3) because of discriminatory animus." *Gourlay,* 276 F. Supp. 2d at 1235 (citing *Sofarelli,* 931 F.2d at 721–23). "Therefore, Section 3617 regulates discriminatory conduct before, during, or after a sale or rental of a dwelling." *Id.*

Given that 1) Plaintiff has failed to plead facts sufficient to state a claim under section 3604 and 2) Plaintiff's counsel indicated during the Hearing that he could point to no authority allowing an FHA claim to go forward under section 3604 where a unit owner in an Association alleged

discriminatory enforcement of rules on the basis of race, the Court continues its analysis assuming Plaintiff intends to maintain a section 3617 claim independently of a section 3603–3606 violation. As Judge Moody observed in *Gourlay*, the viability of such a claim

> [h]inges on the meaning this Court gives to the phrase "to coerce, intimidate, threaten, or interfere. The plain meaning of the first three words, coerce, intimidate, and threaten, requires either violent conduct or threatening conduct. The fourth word of this phrase, interfere, is more general and could conceivably extend broadly to any conduct that limits a protected persons use or enjoyment of a dwelling. Under the canons of statutory construction, however, the general word interfere should be interpreted in reference to and in context with the first three words of this provision. This Court concludes that the use of the phrase "interference" in Section 3617 extends only to discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights.

276 F. Supp. 2d at 1235.  And, as Judge Moody further noted, cases that address violations of section 3617 independently of a violation of sections 3603–3606 have required discriminatory conduct "so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Id.*; *see, e.g.*, *Sofarelli*, 931 F.2d at 722 (finding a note threatening "to break [Sofarelli] in half" if he did not get out of the neighborhood and running up to one of Sofarelli's trucks, hitting it, shouting obscenities, and spitting at Sofarelli along with making racial slurs in a newspaper actionable under section 3617); *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330–31 (7th Cir. 2004) (reversing district court's dismissal of section 3617 charge maintained independently of a section 3604 violation and holding "we do not think Congress wanted, to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case. But what is alleged in this case . . . is a pattern of harassment, invidiously motivated, and, because backed by the homeowners' association to which the plaintiffs belong, a matter of the neighbors' ganging up on them."); *United States v. Pospisil*,

127 F. Supp. 2d 1059, 1062–63 (W.D. Mo. 2000) (concluding summary judgment should be denied on a section 3617 claim because defendant had engaged in cross burning); *Egan v. Schmock*, 93 F. Supp. 2d 1090, 1092–93 (N.D. Cal. 2000) (dismissing section 3617 claim because plaintiffs had not alleged that discriminatory conduct was aimed at driving plaintiffs out of their home); *United States v. Weisz*, 914 F. Supp. 1050, 1052–55 (S.D.N.Y. 1996) (dismissing complaint that contained only a few allegations of religious-based discrimination between feuding neighbors). Relying on such cases, Judge Moody accordingly concluded that "[they] suggest that to constitute actionable coercion, harassment, intimidation or interference the discriminatory conduct, in the absence of a violation of sections 3603–3606, must be severe (*i.e.* violence or threats of violence) and/or pervasive similar to the discriminatory conduct necessary under Title VII to support a hostile work environment claim." *Gourlay*, 276 F. Supp. 2d at 1236.

Similarly, in *Lawrence*, Judge Huck observed that "on one side lie cross-burning, firebombing and other similarly overt discriminatory acts designed to intimidate, coerce, or interfere with housing rights. On the other side lie unfortunate skirmishes between neighbors, tinged with discriminatory overtones or occasional discriminatory comments. Nothing in the text of the FHA or the case law interpreting it indicates that Congress intended to federalize the latter type of dispute." 318 F. Supp. 2d at 1144 (quoting *Walton*, 2004 WL 192106, at *7). Accordingly, Judge Huck concluded that "[a] failure to act does not rise to the level of the egregious overt conduct that has been held sufficient to state a claim under section 3617. . . [,] to constitute actionable interference, in the absence of a violation of sections 3603–3606, the discriminatory conduct must be pervasive and severe enough to be considered as threatening or violent." *Lawrence*, 318 F. Supp. 2d at 1144 (citing *Gourlay*, 276 F. Supp. 2d. at 1236).[2]

---

[2] As Judge Huck further observed, "[o]ther courts have similarly limited the application of section 3617 to only the most extreme or violent conduct." *Lawrence*, 318 F. Supp. 2d at 1144 n.6 (citing *Whisby–Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 852 (N.D. Ill. 2003) (detonation of explosive device simulator combined with racial epithets stated § 3617 claim); *Bryant v. Polston*, No. IP 00–1064–C–T/G, 2000 WL 1670938,

In light of the above principles, it is clear that the Amended Complaint does not adequately state a claim under section 3617 as currently pleaded. Although the Amended Complaint does allege that a unit owner submitted an offensively racist and homophobic motion to the board, Am. Compl. ¶ 19, Plaintiff has not sufficiently alleged that this motion was endorsed or approved in any way by the Association. Indeed, to the contrary, Defendant's MTD expressly counters that this motion was in fact rejected by the Association. MTD at 7. Plaintiff merely alleges, vaguely and generally, that "[t]he above racial hate speech and setereo types [sic] are common and accepted by the Swedish run board as the way things are." Am. Compl. ¶ 20. Here, because "plaintiff[] 'ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed.'" *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Bell Atl. Corp.*, 550 U.S. at 556) (alterations added). Thus, as Plaintiff's counsel conceded at the Hearing, to survive dismissal a second time, Plaintiff must include additional, sufficiently specific allegations of discriminatory conduct "pervasive and severe enough to be considered as threatening or violent." *Lawrence*, 318 F. Supp. 2d at 1144. And, as with Plaintiff's claims under section 3604, Plaintiff must also sufficiently allege that the Association, as the only named Defendant, can be held liable for this conduct due to its action or endorsement, as opposed to an individual owner acting in his or her personal capacity. Accordingly, Count I is **DISMISSED** *without prejudice and with leave to amend.*

---

at \*3 (S.D. Ind. Nov. 2, 2000) (allegations that defendants followed plaintiffs' friends into the woods with a shotgun, walking back and forth in the yard while displaying a shotgun, shooting a pistol into the water behind their home, and running over the foot of one of plaintiffs' children with a boat trailer stated a claim under § 3617); *Johnson v. Smith*, 810 F. Supp. 235, 238–39 (N.D. Ill. 1992) (allegations of cross-burning on plaintiff's lawn and breaking plaintiff's windows stated claim under § 3617); *Seaphus v. Lilly*, 691 F. Supp. 127, 139 (N.D. Ill. 1988) (allegations of physical assault and attempted arson of plaintiff's home stated a § 3617 claim); *Waheed v. Kalafut*, No. 86 C 6674, 1988 WL 9092, at \*1 (N.D. Ill. Feb. 2, 1988) (allegations that defendant firebombed house, screamed racial epithets, and threw beer bottles and rocks constituted claim under § 3617)).

## II. Motion to Strike

### A. Paragraph 28 Must Be Stricken

Defendant's MTS asks the Court to strike paragraphs 15, 19, 20, 21, 27, and 28 of the Amended Complaint. MTS at 4. As discussed at the Hearing, "[m]otions to strike are generally disfavored and denied 'unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Bank of Am., N.A.*, 2014 WL 351962, at *4 (quoting *Pandora Jewelers 1995, Inc.*, 2010 WL 5393265, at *1). As Defendant's counsel agreed at the Hearing, only paragraph 28 of the Amended Complaint meets this definition, as it contains speculative generalizations and inappropriate stereotypes concerning Swedish people that "have no relationship to the controversy." *Id.* However, as the parties agreed at the Hearing, to the extent Plaintiff seeks to rely upon the allegations in paragraphs 15, 19, 20, 21, and 27 to substantiate her claims under either section 3604 or section 3617, such allegations are permissible and shall not be stricken.

### B. The Fee Multiplier Survives

Defendant also includes a request to strike the fee multiplier, MTS at 4, included in Plaintiff's Amended Complaint, *e.g.*, Am. Compl. ¶ 46(C). As Defendant's counsel agreed at the Hearing, though premature, the Court has identified no authority indicating that a fee multiplier like the one requested in the Amended Complaint is impermissible as a matter of law. Accordingly, the fee multiplier shall not be stricken.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, [ECF No. 15], is **GRANTED.** Counts I, II, and III are **DISMISSED** *without prejudice and with leave to amend*. Defendant's Motion to Strike, [ECF No. 16], is **GRANTED**

**IN PART AND DENIED IN PART**.  Paragraph 28 is **STRICKEN**.  The Motion to Strike is **DENIED** in all other respects.

As discussed at the Hearing, Plaintiff shall file a Second Amended Complaint in compliance with this Order on or before **March 26, 2024**.  As agreed by the parties, discovery is hereby **STAYED** until further order of the Court.  This case shall be **CLOSED for administrative purposes only** until Plaintiff files the Second Amended Complaint.  Upon the filing of the Second Amended Complaint, the case will be restored to the active docket.  Failure to timely file a Second Amended Complaint shall result in the dismissal of this case without further notice.

**DONE AND ORDERED** in Miami, Florida this 27th day of January, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**